UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| I.C.E. (U.S.), INC., a Tennessee corporation | ) |
| Plaintiff, | ) Case No. 4:15-cv-00310 |
| v. | ) |
| SCOTT P. MANUEL, an individual, | ) |
| Serve at: 1007 Carman Road<br>Ballwin, MO 63021 | ) |
| and | ) |
| NANCY D. MANUEL, an individual, | ) |
| Serve at: 1007 Carman Road<br>Ballwin, MO 63021 | ) |
| Defendants. | ) |

**COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS AND PIERCING CORPORATE VEIL**

COMES NOW Plaintiff, I.C.E. (U.S.), Inc., and for its Petition against Defendants, Scott P. Manuel and Nancy D. Manuel, respectfully states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, I.C.E. (U.S.), Inc. (hereinafter "I.C.E."), is a Tennessee corporation whose principal place of business is 305 Van Buren Road, Bolivar, Tennessee 38008. I.C.E. is deemed to be a citizen of the state of Tennessee.

2. Defendant Scott P. Manuel ("Mr. Manuel") is an individual residing at 1007 Carman Road, Ballwin, Missouri 63021. Mr. Manuel is a citizen of the state of Missouri.

1

3. Defendant Nancy D. Manuel ("Mrs. Manuel") is an individual residing at 1007 Carman Road, Ballwin, Missouri 63021. Mrs. Manuel is a citizen of the state of Missouri.

4. Mrs. Manuel is the spouse of Mr. Manuel, and together, Mr. Manuel and Mrs. Manuel are hereinafter referred to as the "Defendants".

5. Best Air, LLC ("Best Air"), is a Missouri limited liability company which does business under the assumed name Air Solutions. The principal place of business is located at 1007 Carman Road, Ballwin, Missouri 63021. Mr. Manuel is the sole-member of Best Air.

6. This Court has subject matter jurisdiction of this civil action under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between I.C.E. and the Defendants and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the Defendants reside in St. Louis County, Missouri.

## BACKGROUND FACTS RELEVANT TO ALL COUNTS

A. **Obligations owed to I.C.E. by Best Air.**

8. On or about November 30, 2011, Dollar General Corporation ("Dollar General"), contracted with Best Air for the purchase and installation of certain HVAC equipment at certain improved tracts of real properties owned by Dollar General or one or more of its subsidiaries or affiliates and located in Mississippi, South Carolina, Virginia (collectively, the "Dollar General Properties"), for an original contract price of $2,378,124.00.

9. On or about December 16, 2011, Best Air contracted with I.C.E. for the manufacture and purchase of certain of the HVAC equipment which Best Air installed at the Dollar General Properties for the total purchase price of $1,603,908.00.

10. Best Air paid a down payment of $80,195.40.

11. On January 15, 2012, I.C.E. invoiced Best Air $180,439.64 for a partial payment on the HVAC equipment for the South Carolina job. Best Air paid said invoice.

12. On January 31, 2012, I.C.E. invoiced Best Air $180,439.64 for a partial payment on the HVAC equipment for the Mississippi job. Best Air paid said invoice.

13. On February 17, 2012 I.C.E. invoiced Best Air $360,879.30 for a partial payment on the HVAC equipment for the Virginia job. Best Air paid said invoice.

14. I.C.E. furnished the HVAC equipment for Dollar General Properties.

15. On February 20, 2012, I.C.E. invoiced Best Air for the $204,807.56 remaining balance due on the agreed purchase price for the HVAC equipment provided to Best Air by I.C.E. for the Mississippi job. Best Air has not made any payment on said invoice.

16. On February 29, 2012, I.C.E. invoiced Best Air for the $320,497.55 remaining balance due on the agreed purchase price for the HVAC equipment provided to Best Air by I.C.E. for the South Carolina job. Best Air has not made any payment on said invoice.

17. On March 29, 2012, I.C.E. invoiced Best Air for the $276,648.90 remaining balance due on the agreed purchase price for the HVAC equipment provided to Best Air by I.C.E. for the Virginia job. Best Air has not made any payment on said invoice.

18. The HVAC equipment provided by I.C.E. to Best Air was incorporated into the Dollar General Properties by Best Air.

19. A total balance of $801,954.01 remained unpaid on the agreed purchase price for the HVAC equipment manufactured by I.C.E., furnished by I.C.E. to Best Air, and incorporated by Best Air into the Dollar General Properties.

20. By five checks, Dollar General paid Best Air in full in the amount of $2,438,876.00 for the improvement of the Dollar General Properties, which included installation of the HVAC equipment provided by I.C.E. to Best Air.

21. Despite having been paid in full by Dollar General, Best Air has refused to pay the $801,954.01 remaining balance due on the agreed purchase price for the HVAC equipment manufactured by I.C.E., furnished by I.C.E. to Best Air, and incorporated by Best Air into the Dollar General Properties.

22. I.C.E. brought lawsuits against Best Air seeking recovery of the unpaid invoices owed by Best Air to I.C.E. The lawsuits resulted in a resolution and agreed Judgment in the amount of $650,000.00 entered on July 9, 2014, in St. Louis County Circuit Court. A true and accurate copy of the Judgment is attached hereto as **Exhibit A** and is incorporated herein by this reference.

**B.    Best Air made substantial transfers to or for the benefit of the Defendants.**

23. Post-judgment discovery revealed that Mr. Manuel and Mrs. Manuel essentially used Best Air and transferred substantial money and property to themselves and for their own benefit without regard to corporate formalities or the obligations owed by Best Air to I.C.E.

24. The Defendants' actions left Best Air under-capitalized for the transactions that it was engaging in and insolvent and unable to pay the obligations owed to I.C.E.

25. On December 19, 2011, Best Air paid $28,500 to Nancy Manuel for the purchase of a 2006 Ford F150 that was titled in the name of Defendants.

26. On December 22, 2011, Best Air paid $14,000 to Beuckman Ford and on January 23, 2012, Best Air paid another $14,000 to Ford Motor Credit for a 2012 Ford Escape for the benefit of Defendants.

27. On May 7, 2012, Best Air paid $86,793.25 to Nancy Manuel for her to purchase a 2008 Winnebago Adventurer that was titled in the name of the Defendants.

28. On September 29, 2012, Best Air paid $118,360.19 payable to cash for the purpose of the closing of a purchase of real estate for the benefit of the Defendants.

29. On April 23, 2013, Best Air paid $11,800.00 for a 2013 CanAm 4x4 for the benefit of the Defendants.

30. From December 2011 to February 2013, Best Air transferred an additional $97,187.10 payable to Mrs. Manuel for the benefit of the Defendants.

31. Collectively, the purchases of the 2006 Ford F150, 2012 Ford Escape, 2008 Winnebago Adventurer, 2013 CanAm 4x4, and the transfers of $97,187.10 payable to Nancy Manuel and $118,360.19 payable to cash, are referred to hereinafter as the "Transfers".

32. The total value of the Transfers was $370,640.54.

33. On information and belief, the Defendants used Best Air's bank accounts for the purchase of numerous additional personal items including, food, cigarettes, and entertainment for themselves for which no consideration was paid to Best Air by Defendants.

## COUNT I
## FRAUDULENT TRANSFERS – ACTUAL FRAUD
### (against Mr. Manuel and Mrs. Manuel)

34. The allegations of paragraph 1 through 33 are incorporated herein by reference.

35. At the time of each of the Transfers to or for the benefit of Defendants, I.C.E. was a creditor of Best Air.

36. Best Air did not receive a reasonable equivalent value from the Defendants for the Transfers.

5

37. The Transfers made by Best Air were to or for the benefit of the Defendants, who are insiders of Best Air.

38. At the time of each of the Transfers to or for the benefit of Defendants, Best Air was insolvent, or alternatively, shortly after making the Transfers, Best Air became insolvent.

39. Pursuant to the Missouri Uniform Fraudulent Transfer Act, I.C.E requests the Court enter its judgment avoiding and deeming the Transfers void, or alternatively, awarding I.C.E. the value of the Transfers or the amount necessary to satisfy I.C.E.'s Judgment, whichever is less.

WHEREFORE, I.C.E. respectfully requests that this Court enter judgment in favor of I.C.E. and against the Defendants, jointly and severally, granting the following relief:

A. Voiding the Transfers as fraudulent transfers, or alternatively, awarding I.C.E. the value of the Transfers as fraudulent transfers, or the amount necessary to satisfy I.C.E.'s Judgment, whichever is less, plus court costs, and pre-judgment and post-judgment interest;

B. Granting I.C.E. such additional and further relief as the Court determines is fair and reasonable.

## COUNT II
## FRAUDULENT TRANSFERS – CONSTRUCTIVE FRAUD
### (against Mr. Manuel and Mrs. Manuel)

40. The allegations of paragraph 1 through 39 are incorporated herein by reference.

41. At the time of each of the Transfers to or for the benefit of Defendants, I.C.E. was a creditor of Best Air.

42. The Transfers are avoidable fraudulent transfer pursuant to R.S.Mo. § 428.024.1(2) because:

6

    a. Best Air did not receive a reasonable equivalent value from the Defendants for the Transfers; and

    b. At the time of the Transfers to or for the benefit of the Defendants, Best Air was engaged in a transaction with I.C.E. for which the remaining assets of Best Air were unreasonably small in relation to the transaction; or at the time of the Transfers, Best Air intended to incur, or reasonably should have believed it would incur debts to I.C.E. that were beyond its ability to pay as the debts came due.

43. The Transfers are avoidable fraudulent transfers pursuant to R.S.Mo. § 428.029.1 because:

    a. I.C.E.'s claim against Best Air arose before the Transfers to the Defendants;

    b. Best Air did not receive a reasonable equivalent value from the Defendants for the Transfers; and

    c. At the time of each of the Transfers to or for the benefit of Defendants, Best Air was insolvent, or alternatively, Best Air was rendered insolvent as a result of the Transfers.

44. Pursuant to the Missouri Uniform Fraudulent Transfer Act, I.C.E requests the Court enter its judgment avoiding and deeming the Transfers void, or alternatively, awarding I.C.E. the value of the Transfers or the amount necessary to satisfy I.C.E.'s Judgment, whichever is less.

WHEREFORE, I.C.E. respectfully requests that this Court enter judgment in favor of I.C.E. and against the Defendants, jointly and severally, granting the following relief:

    A. Voiding the Transfers as fraudulent transfers, or alternatively, awarding I.C.E. the value of the Transfers as fraudulent transfers, or the amount necessary to satisfy

I.C.E.'s Judgment, whichever is less, plus court costs, and pre-judgment and post-judgment interest;

   B. Granting I.C.E. such additional and further relief as the Court determines is fair and reasonable.

**COUNT III**
**PIERCING CORPORATE VEIL**
**(against Mr. Manuel)**

45. The allegations of paragraphs 1 through 44 are incorporated herein by reference.

46. Mr. Manuel is the sole member of Best Air.

47. Mr. Manuel solely controls, influences, and governs Best Air.

48. As the sole member of Best Air, there is a unity of interest between Best Air and Mr. Manuel.

49. Mr. Manuel failed to follow corporate formalities and to treat Best Air separately from his own personal financial concerns.

50. Mr. Manuel used Best Air to pay for personal expenses and made substantial transfers of money and proper to or for the benefit of insiders of Best Air.

51. Mr. Manuel used Best Air to make fraudulent transfers to or for the benefit of the Defendants.

52. As a result of the Transfers, Mr. Manuel left Best Air undercapitalized and unable to pay debts as they came due.

53. Giving legal effect to the fictional separation between Best Air and Mr. Manuel under these circumstances would promote the injustice of permitting the Transfers to or for the benefit of Defendants and leaving I.C.E. without any ability to recover its judgment against Best

Air, which has been rendered insolvent and completely unable to pay any remaining debts owed by Best Air.

54. Under the doctrine of piercing the corporate veil, Mr. Manuel should be held directly and personally responsible for the obligations of Best Air to I.C.E., and I.C.E. should be entitled to recover I.C.E.'s Judgment in the amount of $650,000.00 from Mr. Manuel directly.

WHEREFORE, I.C.E. respectfully requests that this Court enter judgment in favor of I.C.E. and against Mr. Manuel, granting the following relief:

A. Entering a monetary judgment in favor of I.C.E. against Mr. Manuel in the amount of $650,000.00, plus court costs, and pre-judgment and post-judgment interest; and

B. Granting I.C.E. such other and further relief as may be just and appropriate under the circumstances.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ B. Hockett

Daniel C. Cox, #38902
dcox@thompsoncoburn.com
Brian W. Hockett, #52984
bhockett@thompsoncoburn.com
One US Bank Plaza
St. Louis, Missouri 63101
Tel: (314) 552-6000
Fax: (314) 552-7461

Attorneys for Plaintiff I.C.E. (U.S.), Inc.