# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| I.C.E. (U.S.), INC., | ) |
| Plaintiff/Counter-defendant, | ) |
| vs. | ) Case number 4:15cv0310 TCM |
| SCOTT P. MANUEL, | ) |
| Defendant/Counter-claimant, | ) |
| NANCY D. MANUEL, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This diversity action is before the Court on the opposed motion of I.C.E. (U.S.), Inc., (I.C.E.) to dismiss the counter-claim of defendant Scott P. Manuel (Manuel) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Background

For purposes of the pending motion, the following allegations are undisputed unless otherwise noted.

I.C.E. contracted with Best Air, L.L.C. (Best Air) to provide air turnover units to be used by Best Air under Best Air's contract with Dollar General Corporation (Dollar General) to purchase and install heating, ventilation, and air conditioning (HVAC) equipment in certain Dollar General buildings. The buildings at issue are in South Carolina, Virginia, and Mississippi. The purchase price for the air turnover units was $1,603.908.00. Dollar General

has paid all it owes to Best Air. Best Air has not paid I.C.E. all that is owed under their contract; $801,954.01 remains due.

I.C.E. pursued various legal avenues to try to collect the monies it allegedly was owed by Best Air, including filing a lawsuit in the Circuit Court of Halifax County, Virginia, against, among others, Best Air and Dollar General; a lawsuit in the Court of Common Pleas of Union County, South Carolina, against, among others, Best Air and Dolgencorp, LLC[1]; and a lawsuit in the Circuit Court of the County of St. Louis, Missouri. In July 2014, I.C.E. and Best Air settled the Missouri action. A consent judgment was then entered, the terms of which included a judgment in favor of I.C.E. and against Best Air in the amount of $650,000 and an agreement whereby counsel for both parties were to file dismissals with prejudice of lawsuits pending in Virginia, South Carolina, and Mississippi. Such dismissals were filed in South Carolina and Virginia.[2]

In February 2015, I.C.E. filed this action against Scott Manuel and Nancy Manuel, alleging that both "essentially used Best Air and transferred substantial money and property to themselves and for their own benefit without regard to corporate formalities or the obligations owed by Best Air to I.C.E." (Compl. ¶ 23.) I.C.E. seeks an order voiding the transfers and a judgment against Scott Manuel, the sole member of Best Air, in the amount of $650,000. (Id. at 9.)

---

[1] "Dolgencorp, LLC operates as a subsidiary of Dollar General Corporation." Company Overview of Dolgencorp, LLC, http://www.bloomberg.com/research/stocks/private /snapshot. (last visited July 30, 2015).

[2] The parties do not explain what happened in the Mississippi lawsuit.

Scott Manuel, as assignee of Best Air, has filed a counterclaim against I.C.E. for tortious interference with a business expectancy.[3] Specifically, he alleges that the actions of I.C.E. in filing mechanic's liens and lawsuits about units provided for the Dollar General properties caused Dollar General to terminate its negotiations with Best Air for work to be performed on Dollar General property in Pennsylvania and deprived Best Air of "other lucrative business opportunities with Dollar General." (Countercl. ¶¶ 16, 26 , ECF No. 27.)

I.C.E. moves to dismiss the counterclaim, arguing that it is precluded by the doctrine of *res judicata* as applied in Virginia and South Carolina and by Missouri's rule on compulsory counterclaims. Scott Manuel (Manuel) disagrees.

## Discussion

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555-56 (2007). If an affirmative defense, e.g., *res judicata*, "is apparent on the face of the complaint, . . . [the defense] may provide the basis for dismissal under Rule 12(b)(6)." **Noble Sys. Corp. v. Alorica Central, LLC**, 543 F.3d 978, 983 (8th Cir. 2008). Accord **C.H. Robinson Worldwide, Inc. v. Lobrano**, 695 F.3d 758, 763-64 (8th Cir. 2012) (holding that district court properly ruled on merits of *res judicata* defense on a motion to dismiss). When ruling on a Rule 12(b)(6) motion, the Court "is limited to the material properly before it . . ., which

---

[3]The Court notes that the validity of Best Air's assignment to Scott Manuel of its tort claim against I.C.E. is not questioned in the motion to dismiss.

may include public records and materials embraced by the complaint." **Noble Sys. Corp.**, 543 F.3d at 983.

The Virginia Case. Because "'[t]he law of the forum that rendered the first judgment controls the *res judicata* analysis,'" **Lobrano**, 695 F.3d at 764 (quoting Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011)), the Court looks to Virginia law to determine whether the dismissal of the Virginia action bars Manuel's counterclaim. The doctrine of *res judicata* was recently described by the Virginia Court of Appeals:

> [R]es judicata is a judicially created doctrine resting upon public policy considerations which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties. [T]he principles of res judicata can be comprised of two distinct concepts: "issue preclusion" and "claim preclusion." Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim. In contrast, claim preclusion foreclos[es] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. [C]laim preclusion treats unasserted claims as being subsumed into the disposition of related, previously adjudicated, claims arising out of the same cause of action.

**Advance Auto and Indem. Ins. Co. of North Am. v. Craft**, 759 S.E.2d 17, 24 (Va. Ct. App. 2014) (alterations in original) (internal citations and quotations omitted).

There is no contention that Manuel's claim of tortious interference was actually litigated in the Virginia proceedings. Consequently, the question is whether the concept of claim preclusion bars his counterclaim. Rule 1:6(a) of the Supreme Court of Virginia provides that:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same

> opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

Thus, under claim preclusion, "a final decree would not only be binding as to all questions actually raised and decided, but also to any issue which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time." **Tyco Electronics v. Vanpelt**, 743 S.E.2d 293, 299 (Va. Ct. App. 2013).

The documents before the Court fail to carry I.C.E.'s burden in two respects. First, "claim preclusion can never apply when the ostensibly barred claim falls outside the subject-matter jurisdiction of the tribunal and thus could not have been adjudicated in the prior action." **Virginia Imports, Ltd. v. Kirin Brewery of Am., LLC**, 650 S.E.2d 5543, 561 (Va. Ct. App. 2007). According to the allegations of the complaint, I.C.E. is a Tennessee corporation and Manuel and Best Air are Missouri citizens. I.C.E. has made no showing that the Virginia courts could have adjudicated Best Air's tortious interference with business claim in I.C.E.'s action to enforce a mechanic's lien on equipment installed on Virginia property.

Second, "[i]f the second harm has not yet occurred upon the accrual of the first right of action, then the [litigant] cannot possibly bring them in the same action." **Kiser v. A.W. Chesterton Co.**, 736 S.E.2d 910, 922 (Va. 2013). The documents before the Court indicate that the second harm – the alleged tortious interference with a business expectancy – could

not have occurred before the accrual of the first action as it was the first action that initiated the events leading to the counterclaim.

The South Carolina Case. Similarly to Virginia, in South Carolina "[r]es judicata encompasses both issue preclusion and claim preclusion." **Dozier v. Am. Red Cross**, 768 S.E.2d 222, 289 (S.C. Ct. App. 2014). Claim preclusion "bars [litigants] from pursuing a later suit where the claim (1) was litigated or (2) could have been litigated." **Catawba Indian Nation v. State**, 756 S.E.2d 900, 906 (S.C. 2014). Claim preclusion "may be applied if (1) the identifies of the parties are the same as in the prior litigation; (2) the subject matter is the same as the prior litigation; and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." **Id.** at 907. In South Carolina, "[t]he application of claim preclusion turns on whether a counterclaim is permissive or compulsory. If a counterclaim is permissive, but not raised in the first case, a defendant is not precluded from asserting the claim in a later action." **Crestwood Golf Club, Inc. v. Potter**, 493 S.E.2d 826, 835 (S.C. 1997). "By definition, a counterclaim is compulsory only if it arises out of the same transaction or occurrence as the opposing party's claim." **Wachovia Bank, Nat. Ass'n v. Blackburn**, 755 S.E.2d 437, 441 (S.C. 2014). "Claims that arise out of separate transactions or occurrences than the subject matter of the opposing party's claims are, instead, permissive." **Id.** South Carolina uses the "logical relationship test," i.e., whether there is "any logical relationship between the claim and the counterclaim," to determine whether a counterclaim is permissive or compulsory. **North Carolina Federal Sav. and Loan Ass'n v. DAV Corp.**, 381 S.E.2d 903, 905 (S.C. 1989). "Whether a counterclaim is logically

related to the initial claim depends upon the facts of each case." **Beach Co. v. Twillman, Ltd.**, 566 S.E.2d 863, 865 (S.C. Ct. App. 2002).

Clearly, Best Air's claim that it was damaged by I.C.E.'s allegedly defective turnover units was a claim that arose out of the same transaction as I.C.E.'s claim and could have been – and was – litigated in the South Carolina action. See e.g. **Stark Truss Co. v. Superior Constr. Corp.**, 602 S.E.2d 99, 104 (S.C. Ct. App. 2004) (holding that the claim of a company for monies spent for replacement parts was a compulsory counterclaim in a action against it for breach of a purchase agreement filed by the company it had originally contracted with).

In the instant case, however, the question is whether Manuel's pending claim of tortious interference with business expectancy would be construed by the South Carolina courts as a compulsory counterclaim. To prevail on this claim under South Carolina law, Manuel would have to prove that I.C.E. intentionally interfered with Best Air's potential contractual relations for an improper purpose or by improper methods and that the interference caused injury to Best Air. See **Santoro v. Schulthess**, 681 S.E.2d 897, 903 (S.C. Ct. App. 2009). The improper purpose must predominate over any other purpose. **Id.** "As an alterative to establishing an improper purpose, [Manuel] may prove that [I.C.E.'s] method of interference was improper under the circumstances." **Id.**

Manuel's counterclaim alleges that I.C.E. filed its mechanic's liens and lawsuits in South Carolina *and* Virginia courts for an improper purpose – "to gain an unfair advantage and leverage over Best Air in connection with the payment dispute arising from [I.C.E.'s]

contract." (Countercl. ¶ 33.) Under the circumstances now before the Court, the Court declines to find that this would be construed by the South Carolina courts as a compulsory counterclaim.

The Missouri Case. I.C.E. also argues that the counterclaim must be dismissed because it was not raised, but had to be, in the Missouri court action it filed against Best Air for breach of contract and unjust enrichment/quantum meruit. (See Pl.'s Ex. 5, ECF No. 30-5.)

Missouri Supreme Court Rule 55.32(a) provides that "[a] pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." "'When a claim is compulsory, you use it or lose it.'" **First Comty. Credit Union v. Levison**, 395 S.W.3d 571, 579 (Mo. Ct. App. 2013) (quoting Hemme v. Bharti, 183 S.W.3d 593, 596 (Mo. 2006) (en banc)).

I.C.E. filed its state court action in April 2014. According to the allegations of the counterclaim, Dollar General terminated its negotiations with Best Air by the end of 2013. (Countercl. ¶ 25.) Therefore, Best Air's claim for tortious interference with business expectancy arose before I.C.E. filed its breach of contract suit. See **Port v. Maple Tree Invs., Inc.**, 900 S.W.2d 3, 5 (Mo. Ct. App. 1995) (holding that under Rule 55.32(a), a counterclaim has accrued "when the damage resulting therefrom is sustained and capable of ascertainment"). The question then is whether the counterclaim arises out of the same

transaction or occurrence. "Where the facts are so closely related that a claim made in a later case would have been a proper defense in another case, it is clear that the cases arise from the same transaction or occurrence." **Adamson v. Innovative Real Estate, Inc.**, 284 S.W.3d 721, 729 (Mo. Ct. App. 2009).

To establish a breach of contract in Missouri, the I.C.E. must demonstrate "(1) the existence and terms of a contract; (2) that I.C.E. performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the I.C.E.." **Keveney v. Missouri Military Academy**, 304 S.W.3d 98, 104 (Mo. 2010) (en banc). "To prove a claim for tortious interference with a . . . business expectancy, the I.C.E. must prove . . . '(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from the defendant's conduct.'" **Central Trust and Inv. Co. v. Signalpoint Asset Mgt., LLC**, 422 S.W.3d 312, 324 (Mo. 2014) (en banc) (quoting Western Blue Print Co. v. Roberts, 367 S.W.3d 7, 10 (Mo. 2012) (en banc)).

The question whether a counterclaim was compulsory was addressed in **First Cmty. Credit** when a secured lender filed an action for breach of contract to recover the deficiency owed by the defendant-debtors after the collateral, a car, was repossessed and sold. 395 S.W.3d at 575. One of the debtors did not respond; the other filed an answer and a counterclaim for the lender's alleged "unlawful and deceptive pattern of wrongdoing regarding the repossession of collateral." **Id.** Addressing the question whether the

counterclaim was compulsory in the context of determining whether the trial court's order dismissing the petition without ruling on the counterclaim was final and appealable, the court of appeals held that it was not. **Id.** at 579-80. "Here, while there is a common legal question involving both [the lender's] Petition and [the one debtor's] Counterclaim . . . both the factual underpinnings of the claims and the application of the law are largely distinct, suggesting that they are separate 'claims.'" **Id.** at 580. "First, the central 'transaction or occurrence' giving rise to the [lender's] Petition is [the debtor's] breach of contract. In contrast, the central 'transaction or occurrence' giving rise to [the debtor's] Counterclaim is purportedly 'an unlawful and deceptive pattern of wrongdoing followed by [the lender] with respect to the repossession of collateral.'" **Id.** The court then held that "factual underpinnings and the laws sought to be applied are sufficiently distinct and appealable judicial units." **Id.** Also weighing against a conclusion that the counterclaim was compulsory was that the counterclaim was "an independent cause of action" that could be brought in a separate lawsuit. **Id.** See also **Adamson**, 284 S.W.3d at 728-29 (in determining whether a cause of action is single, the trial court should consider, inter alia, "whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions").

In the instant case, I.C.E. filed suit in state court for monies allegedly owed it under a contract with Best Air for the manufacture and purchase of certain units to be installed in Dollar General properties in Mississippi, South Carolina, and Virginia. In the counterclaim at issue, Manuel, as assignee of Best Air, seeks damages for a business expectancy allegedly lost because I.C.E. improperly filed liens and enforcement lawsuits against Best Air with the

purpose of gaining an advantage in connection with their payment dispute. There is no showing, or argument, that I.C.E.'s complained-of actions would be a defense to its claim for monies owed under the purchase agreement. Moreover, evidence of Best Air's failed negotiations with Dollar General is necessary to the counterclaim but not to the breach of contract claim.

## Conclusion

I.C.E. has failed to sufficiently demonstrate that the counterclaim against it for tortious interference with business expectancy would be considered in the Virginia and South Carolina courts to be barred by *res judicata* or that the counterclaim is compulsory under Missouri law. Accordingly,

**IT IS HEREBY ORDERED** the motion of I.C.E. (U.S.), Inc., to dismiss the counterclaim is **DENIED**. [Doc. 29]

**IT IS FURTHER ORDERED** the request of I.C.E. (U.S.), Inc., for oral argument on its motion is **DENIED** as moot.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  11th  day of August, 2015.